UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEVIN KEO, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-12970-ADB |
| | * | |
| BRUCE GELB, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Petitioner Kevin Keo ("Keo") is currently serving a life sentence with the possibility of

parole following his conviction on the charge of first-degree murder under Massachusetts

General Laws ch. 265, § 1. Keo's conviction followed the shooting death of Christian Martinez

("Martinez") on November 1, 2007 in Lynn, Massachusetts. Presently pending before this Court

is Keo's habeas corpus petition brought pursuant to 28 U.S.C. § 2254, in which he argues that his

trial suffered from federal constitutional violations. For the reasons stated below, this Court

DENIES Keo's petition for a writ of habeas corpus.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The Massachusetts Supreme Judicial Court ("SJC") provided the following account of

the facts, which both parties rely on in their briefs. See Commonwealth v. Keo, 3 N.E.3d 55, 58–

61 (Mass. 2014).[1]

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption applies with equal
force to findings of fact by state trial and appellate courts. Rashad v. Walsh, 300 F.3d 27, 35 (1st

The defendant [Keo] and Bonrad Sok, on the one hand, and the victim [Martinez], on the other, were members of rival gangs. The Commonwealth introduced evidence that the murder was committed in retaliation for a stabbing of the defendant by the victim approximately five weeks before the victim's murder. At the time of the stabbing, Sok and Vannarith Chhay (Chhay) had been with the defendant. Evidence also was presented that, two months prior to the shooting, the defendant's then girl friend overheard him telling someone that he had a gun, but that it was not in his possession.

In the late afternoon on November 1, 2007, the victim and his girl friend [Choen] went to a restaurant in Lynn and sat at a booth inside. Nearby, Sok shared a table with Maverick Tran (Tran), Rebecca Pen, and her brother Moses. Sok borrowed Rebecca's cellular telephone, ostensibly to contact his girl friend. Ten to fifteen minutes later, the defendant and Chhay arrived at the restaurant and joined Sok's group.

The victim and his girl friend got up and left the restaurant, followed by Sok, Tran, and Chhay. Outside, Sok asked the victim whether he was a "cuz," meaning "crip." The victim asked him why, and Sok repeated the question. When the victim answered affirmatively, the three men tried to "jump" and hit him. They chased the victim around his automobile, which was parked directly in front of the restaurant, as the victim's girl friend told them to stop.

The victim ran back inside the restaurant, followed by the three men. According to Rebecca, the defendant was at the front door when the men returned. There was a "fight" and the defendant fell on the floor. When the victim's girl friend reentered the restaurant, she saw Sok hitting the victim as he was held in a "bear hug" from behind by Chhay. The restaurant owner's son broke up the fight and told the group to leave. The victim and his girl friend left, followed by the defendant, Sok, Chhay, and Tran. The victim's girl friend did not recall seeing the defendant at the restaurant, inside or outside, but his presence there was established by Rebecca, the owner, and the owner's son, all of whom previously knew him.

The victim's girl friend was the only witness who testified to what next transpired. After leaving the restaurant, she and the victim walked over and stayed at the victim's automobile. Sok, Chhay, and Tran walked past them, and some distance away, to the left of the restaurant sign. The men faced the victim and his girl friend, and Sok and the victim exchanged words. The victim's girl friend heard

Cir. 2002). Keo has not rebutted any of these facts by clear and convincing evidence as required by § 2254(e)(1).

a "ring" in her ear and looked at herself to see whether she had been shot. The victim said, "Babe, I got shot," then dropped to the ground. Tran's "jaw dropped," and he looked "shocked." Sok and Chhay were gone. The victim's girl friend ran inside the restaurant and asked someone to telephone 911. The owner's son, who had heard a "pop" when the group had been outside, did so. He then ran outside and saw "several" people running down the street.

Police officers responded to the call from the restaurant at approximately 5 p.m. They recovered a .22 caliber discharged cartridge casing near the victim. The victim, who was found on the ground partly leaning against the front entrance to the restaurant, was transported to a hospital where he died. He died as a result of a gunshot wound to the torso, with perforations of the stomach, small intestine, and iliac artery. The bullet had entered the left side of his abdominal area and traveled "left to right, downward, and front to back." The bullet lodged inside the victim's body; there was no exit wound.

Just before 5 p.m., two men, working near the restaurant, saw four young men run past. Shortly thereafter, the defendant, Sok, Chhay, and Tran went to the home of a friend of the defendant, Malcolm Leng King (King), and woke him. They stayed in his room for approximately one hour. King heard the defendant say that something had happened at the restaurant and heard the defendant state, "We shot him." Tran and Chhay left together; Sok and the defendant departed together.

On the Tuesday following the murder, the defendant saw Kevin Sim (Sim) at Rebecca's residence, where Sim also lived. Sim had heard about an incident at the restaurant and asked the defendant about it. The defendant told Sim that he had gone to the restaurant in response to a telephone call from Sok. The defendant stated that Sok, Tran, and Chhay were the ones involved in the initial altercation with the victim; the defendant remained inside. The defendant went on to tell Sim that once the victim had reentered the restaurant, the victim had assaulted the defendant and a fight had ensued. The owner told them to leave, but they continued to argue outside and the victim was shot. The defendant told Sim that he had had no intention of harming the victim when he went to the restaurant.

Subsequent to the shooting, in a search of the defendant's home, police recovered one box of .22 caliber ammunition under the defendant's bed and two .22 caliber projectiles in his closet. One of the projectiles, as well as the boxed ammunition, bore the stamp "REM," signifying its manufacturer, Remington. The other loose

projectile bore a different marking, possibly a "T" or an "F," indicating a different manufacturer. It appears that the .22 caliber discharged cartridge casing recovered near the victim at the restaurant was from a manufacturer different from that of the ammunition seized from the defendant's bedroom. Lieutenant Michael Vail of the Lynn police department, however, testified that a firearm capable of firing .22 caliber ammunition would be able to fire any brand of .22 caliber ammunition.

On the day following the shooting, police executed a search warrant at Sok's home. They did not find any firearms or ammunition, but photographed three groupings of numbers on Sok's bedroom wall. Lieutenant Vail testified that, based on his training and experience, the numbers are used by local gangs to signify words. He gave his opinion that the numbers on Sok's wall stood for the words "blood family," "insane gangster bloods," and "crip killer."

Testing of the victim's clothing revealed a pattern of nitrate particles. A chemist from the State police crime laboratory gave her opinion that this pattern indicated that the distance from which the victim had been shot could not have exceeded four feet.
The defendant was arrested several days after the shooting, on November 9, at Rebecca's residence. There, police found him hiding behind a bedroom door.

The defendant did not testify. His counsel argued that Sok had been the shooter and that the defendant's presence and membership in the same gang as Sok did not make him criminally responsible for the crime. The defendant produced one witness, Kathleena Am (Am), and introduced the grand jury testimony of Terry Leng (Terry). On November 1, Am was visiting Terry and when she arrived, Terry's family was present as well as the defendant, Sok, Tran, and Chhay. Am gave Tran and Chhay a ride to another location and then returned to Terry's home. Am, along with Terry, Terry's sister Saky, and another woman, Soy Anna Kouch (Kouch), then headed to an event in Chelsea. Am drove; the four women were inside the automobile, along with Sok and the defendant. During the ride, Am heard Sok say, "I shot him. I think I shot him in the heart," "it would be twenty-five to life," and "I think I shot a crab [meaning a crip]."

In her testimony to a grand jury, Terry relayed that she was in King's room on the night of the shooting and heard either the defendant or Sok say that he had shot somebody. Subsequently, while in Am's automobile, she heard Sok state, "I shot somebody," and "Put the blame on me." Terry recalled that, at the time, Sok was speaking to Kouch.

> In rebuttal to Terry's testimony, the Commonwealth called Kouch as a witness who testified that, during the automobile ride, Sok remarked to her, "Whatever happens, put the blame on me. I didn't do anything wrong."

Keo, 3 N.E.3d at 58–61 (footnotes omitted).

The SJC ultimately affirmed Keo's conviction. Id. at 72. On June 30, 2014, Keo filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. On October 17, 2014, Respondent Bruce Gelb ("Gelb") filed an answer to the petition. [ECF No. 16]. Following the appointment of counsel for Keo [ECF No. 27], Keo filed a memorandum of law in support of his petition on May 26, 2015 [ECF No. 34]. On November 2, 2015, Gelb filed a memorandum of law in opposition. [ECF No. 42].

## II.    LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state

court decision is considered an unreasonable application of Supreme Court precedent if the state

court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 407. An

unreasonable application requires "some increment of incorrectness beyond error." Norton v.

Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotations omitted). Lastly, a state court

judgment is based on an unreasonable determination of the facts if the decision is "objectively

unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v.

Cockrell, 537 U.S. 322, 340 (2003).

## III.   DISCUSSION

In his petition, Keo presents three grounds for federal habeas relief: (1) that his counsel

was constitutionally ineffective because he failed to obtain the entire transcript of a witness's

prior testimony, which would have allowed counsel to more effectively impeach the witness; (2)

that the trial judge erroneously admitted evidence in violation of Keo's Confrontation Clause

rights and instructed jurors to consider it as evidence of Keo's state of mind; and (3) that his

counsel was constitutionally ineffective because he failed to offer the prosecutor's statements

from his co-defendant's earlier trial that contradicted the prosecutor's theory of guilt in Keo's

trial. Gelb argues that none of these grounds warrant relief pursuant to the AEDPA.

### a.   Ground One: Ineffective Assistance of Counsel for Failure to Obtain the Full Transcript of the Prior Testimony of a Key Witness for the Commonwealth

At Keo's trial, Choen, Martinez's (the victim) girlfriend, was "the only witness to testify

about the distance between Sok and [Martinez] just prior to the shooting. This testimony was

important because forensic evidence suggested that the fatal shot was fired from no more than

four feet away." Keo, 3 N.E.3d at 62–63. Keo contends that his trial counsel was constitutionally

ineffective because he failed to obtain a full transcript of Choen's testimony from Sok's trial for

Martinez's murder, which could have been used to impeach her subsequent testimony at his trial.

6

[ECF No. 34 at 9–10]. Choen testified at both Sok's and Keo's trial, which were just months apart. Keo, 3 N.E.3d at 62–63. According to Keo, Choen first testified that Sok and Martinez were between twelve and twenty feet apart, but said during Keo's trial that these two men were thirty feet apart. [ECF No. 34 at 10–11]. Given this alleged discrepancy, Keo argues his trial counsel was ineffective for failing to obtain the entirety of Choen's testimony from Sok's trial. Id. at 9–11. The SJC rejected this argument, finding that using that inconsistency to impeach Choen's testimony was "not 'likely to have influenced the jury's conclusion'" in Keo's trial. Keo, 3 N.E.3d at 63 (quoting Commonwealth v. Frank, 740 N.E.2d 629, 633 (Mass. 2001)). Gelb argues that the SJC reasonably applied clearly established federal law in finding that Keo's counsel was not ineffective under Strickland. [ECF No. 42 at 9–13].

The Supreme Court set forth the standard for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, trial counsel is ineffective such that his performance violates a client's Sixth Amendment right to counsel if (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "deficiencies in counsel's performance [were] prejudicial to the defense." Strickland, 466 U.S. at 688, 692. To show prejudice, a claimant must show that "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697. The Strickland standard is broadly deferential to the strategic decisions of the trial counsel. Id. at 689. "[T]o establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy

burden" because the petitioner must contend with the deferential <u>Strickland</u> standard, but also the

deferential standard required by § 2254. <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 70 (1st Cir. 2009).

When evaluating Keo's ineffective assistance claim related to the impeachment of a

witness, the SJC reviewed the case under Massachusetts General Laws chapter 278, § 33E,

which affords plenary review to first-degree murder convictions and is more generous to

defendants than <u>Strickland</u> or the state equivalent, <u>Commonwealth v. Saferian</u>, 315 N.E.2d 878

(Mass. 1974). <u>Keo</u>, 3 N.E.3d at 63; <u>see also</u> <u>Mello v. Dipaulo</u>, 295 F.3d 137, 144 (1st Cir. 2002).

In a review under § 33E, the SJC determines if there was a "substantial likelihood of a

miscarriage of justice" in the trial. <u>Mello</u>, 295 F.3d at 144. Because the § 33E standard is broader

than <u>Saferian</u>/<u>Strickland</u>, "if the SJC found that the 'substantial likelihood of a miscarriage of

justice' standard was not met, it must have concluded that the <u>Saferian/Strickland</u> standard for

ineffective assistance of counsel was not met as well." <u>See</u> <u>id.</u> Here, the SJC found that Choen

did not testify as to the exact distances in either trial, and that there was no "significant

discrepancy" that could have been "used to impeach her at [Keo's] trial or to foreclose the

prosecutor from arguing that Sok could not have been the shooter." <u>Keo</u>, 3 N.E.3d at 63. Given

this, the SJC concluded that Keo's counsel was not ineffective for failing to obtain all of Choen's

prior testimony. <u>Id.</u> at 63–64.

The SJC's application of <u>Strickland</u> to the facts of this case was not unreasonable. The

SJC carefully examined whether Keo's trial counsel's failure to impeach Choen with her prior

testimony prejudiced Keo's defense and found that it had not. <u>Keo</u>, 3 N.E.3d at 63. The SJC

found that because the Commonwealth based its theory of guilt on <u>Commonwealth v. Zanetti</u>,

910 N.E.2d 869 (Mass. 2009), "which effectively erased the distinction between principal and

joint liability," <u>Keo</u>, 3 N.E.3d at 58 n.2, "the jury were not required to find that the defendant

was the shooter," id. at 63. Further, the SJC found that the impeachment value of the prior

testimony was diminished by the fact that, regardless of the number of feet elicited by counsel at

each trial, the prosecutor in Keo's trial "had positioned himself at essentially the same position in

the court room" as Sok's counsel while he questioned Choen about the distance at Sok's trial.

The SJC also found that Choen was only able to testify that Sok, Tran, and Chhay "were over by

the restaurant sign," and the trial judge refused to take judicial notice of the prosecutor's

suggestion that this was 30 feet because Choen was herself unable to quantify the actual number

of feet. See id. Having reasonably determined that impeaching Choen would not have swayed

the jury, and that, in any event, it would not have precluded the prosecutor from arguing that Keo

was the shooter, the SJC reasonably rejected Keo's ineffective assistance of counsel claim. See

Strickland, 466 U.S. at 697 (ineffective assistance of counsel claims may be rejected by first

finding lack of prejudice). Therefore, the SJC did not decide contrary to, or unreasonably apply,

clearly established federal law.

Keo also argues under § 2254(d)(2) that the SJC's conclusion that Keo was not

prejudiced "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State Court proceeding." [ECF No. 34 at 18]. He cites no

federal cases in support of this argument. "Factual determinations by state courts are presumed

correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision

adjudicated on the merits in a state court and based on a factual determination will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding, § 2254(d)(2)." Miller-El, 537 U.S. at 340. Keo does not rebut the

presumption of the correctness of the state court's factual determinations by clear and convincing

evidence. At bottom, Keo disagrees with the SJC's assessment of the impeachment value of

Choen's prior testimony and the importance the SJC placed on undermining the prosecution's principal theory that Keo was the shooter. "Reasonable minds reviewing the record might disagree . . . , but on habeas review that does not suffice to supersede the trial court's . . . determination." Rice v. Collins, 546 U.S. 333, 342 (2006). Although Keo may disagree with how the SJC reasoned from the facts, he fails to show how the SJC's ultimate determination was "objectively unreasonable" under AEDPA. As the Court already explained above, the SJC's determination that Keo was not prejudiced under Strickland by the alleged defect was not unreasonable.

**b.   Ground Two: Violation of Evidentiary Law and the Confrontation Clause by Admission of the Coded Statement Found on Sok's Bedroom Wall**

Keo next contends that admitting a series of numbers written on Sok's bedroom wall and allowing testimony that they stood for "crip killer" was irrelevant and resulted in a violation of his Confrontation Clause rights. [ECF No. 34 at 19–25]. The SJC rejected both these arguments. Keo, 3 N.E.3d at 62 n.16. Gelb argues here that both of Keo's contentions are unavailing because state evidentiary law rulings cannot be reviewed in a habeas proceeding and the statements at issue were not covered by the Confrontation Clause. [ECF No. 42 at 14–15].

First, Gelb is correct that Keo cannot obtain federal habeas relief based on state law evidentiary issues. See Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009); Estelle v. McGuire, 502 U.S. 62, 67 (1991) (holding that review of state court evidentiary rulings "is no part of a federal court's habeas review of a state conviction"); see also Evans v. Thompson, 465 F. Supp. 2d 62, 79 (D. Mass. 2006), aff'd, 518 F.3d 1 (1st Cir. 2008) ("errors of state law do not provide a basis for federal habeas corpus relief").

Second, the testimony at issue did not violate the Confrontation Clause because the coded message was not offered for the truth of the matter asserted. Keo's assertion that the SJC did not

rule against him on the merits of the Confrontation Clause argument is incorrect because the SJC

specifically held that "[b]ecause the statements were not admitted for their truth, there is no merit

to the defendant's claim that admission of the 'crip killer' reference violated his confrontation

rights." Keo, 3 N.E.3d at 62 n.16 (citing Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004)).

Thus, this Court's review of Keo's confrontation clause argument is subject to § 2254(d) and is

not de novo.

At Keo's trial, the coded statement was admitted solely to show Keo's and Sok's state of

mind and not for the truth of the matter asserted. Keo, 3 N.E.3d at 62. The trial judge specifically

instructed the jury that it was not to consider the coded message for the truth of the matter. Id.

The Sixth Amendment's Confrontation Clause bars admission of "testimonial hearsay."

Crawford v. Washington, 541 U.S. 36, 53 (2004). Under the Federal Rules of Evidence, hearsay

is as an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c).

Massachusetts courts follow the same definition. Commonwealth v. Hurley, 913 N.E.2d 850, 860

(Mass. 2009). Current Supreme Court precedent makes clear that if a statement is not offered for

the truth of the matter asserted, it is not barred by the Confrontation Clause. Williams v. Illinois,

132 S.Ct. 2221, 2227–8 (2012) ("it is settled that the Confrontation Clause does not bar the

admission of such statements [not admitted for truth of the matter asserted]"); see also Crawford,

541 U.S. at 59 ("The [Confrontation] Clause also does not bar the use of testimonial statements

for purposes other than establishing the truth of the matter asserted.").[2] Accordingly, the SJC's

conclusion that there was no Confrontation Clause violation was not contrary to clearly

established federal law.

---

[2] In analyzing the Confrontation Clause issue, the Court relies on the Supreme Court's newer test
as laid out in Crawford and its progeny. Lilly v. Virginia, 527 U.S. 116 (1999), cited by Keo,
was decided before Crawford and involves a hearsay exception rather than a statement not
offered for the truth of the matter asserted.

### c. Ground Three: Ineffective Assistance of Counsel for Failure to Offer the Prosecutor's Contradictory Statements from Sok's Trial

In his final claim for relief, Keo contends that his trial counsel was ineffective for failing to offer statements the prosecutor made at Sok's trial to the effect that Sok (rather than Keo) was the shooter. [ECF No. 34 at 26]. Keo argues that these statements contradicted the prosecution's theory at Keo's trial, which was that Keo was the shooter. Id. The SJC extensively considered this argument and ultimately concluded that Keo's counsel was not ineffective because (1) Massachusetts courts have never held that a prosecutor's statements from closing argument at another defendant's trial are admissible as statements against interest by a party-opponent at a later trial, and (2) the statements would not have been admissible anyway because, among other reasons, the prosecutor's theories at each trial were alternatives to each other and not contradictory as a matter of law. Keo, 3 N.E.3d at 68–70. The SJC further concluded that Keo's counsel's failure to admit the prosecutor's closing statements from Sok's trial was not likely to have unfairly influenced the verdict because the jury, under Zanetti, did not have to determine that Keo was the shooter. Id. at 70. Gelb argues that this was a reasonable application of the Strickland standard. [ECF No. 42 at 16–17].

As with Ground One, this ineffective assistance of counsel claim is governed by Strickland, and the SJC reviewed the claim under Massachusetts General Laws chapter 278, § 33E, which is broader than Strickland/Saferian. See Keo, 3 N.E.3d at 70. Under Strickland, ineffective assistance of counsel requires showing that there is a reasonable probability that proceedings would have reached a different result without the deficiency in representation. Sleeper, 510 F.3d at 39. "[T]he 'pivotal question' in a federal collateral attack under Strickland is not 'whether defense counsel's performance fell below Strickland's standard,' but 'whether the state court's application of the Strickland standard was unreasonable,' . . . that is, whether

'fairminded jurists' would all agree that the decision was unreasonable." Jewett v. Brady, 634

F.3d 67, 75 (1st Cir. 2011) (internal citations omitted) (quoting Harrington v. Richter, 562 U.S.

86, 101 (2011)). Furthermore, "the Strickland standard is a very general one, so that state courts

have considerable leeway in applying it to individual cases." Id.

In this case, the SJC concluded there was no prejudice from trial counsel's failure to

introduce the prosecutor's prior statements from Sok's trial because the Commonwealth pursued

a theory of guilt pursuant to Zanetti, such that "the jury could have reached its verdict without

determining that the defendant had been the shooter." Keo, 3 N.E.3d at 70. The SJC found that

the evidence at trial was sufficient to support the jury's verdict and that Keo's trial counsel had

vigorously defended on the theory that Sok, rather than Keo, was the shooter. Id. at 70–71.

Further, the SJC noted that the prosecutor specified in his closing argument that the jury did not

need to determine who the shooter was in order to convict Keo. Id. It was thus not unreasonable

for the SJC to conclude that, had trial counsel introduced the prosecutor's prior statements that

Sok was the shooter, there was nonetheless no reasonable probability that the outcome of Keo's

trial would have been different. Keo does not cite any federal case law to support the contention

that the SJC unreasonably applied Strickland when it determined that the requisite prejudice did

not exist under these circumstances.

Furthermore, the SJC did not unreasonably apply Strickland when it determined that

Keo's trial counsel's performance was not deficient. The SJC specifically concluded that

"[w]hile numerous Federal and State courts permit admissions against interest by a party-

opponent, including admissions by prosecutors, we have never done so or, in the words of the

dissent, 'adopted the logical corollary' . . . in the context of admitting a transcript of a

prosecutor's closing argument from another defendant's trial." Keo, 3 N.E.3d at 68. The SJC

also determined that, even adopting Second Circuit case law, the prosecutor's closing statements

from Sok's trial would not have been admissible at Keo's trial because the statements were not

contradictory as a matter of Massachusetts law. Id. at 75 (citing United States v. Orena, 32 F.3d

704, 716 (2d Cir. 1994) ("The defense is allowed to introduce a prosecutor's statement from a

prior trial when: (1) the prosecution offered an inconsistent assertion of fact at the prior trial; and

(2) the prosecution can offer no 'innocent' explanation for the contradiction.")). Keo's counsel

was not constitutionally required to pursue a futile tactic. See Premo v. Moore, 562 U.S. 115,

124 (2011) (failing to make a probably futile motion to suppress was not constitutionally

inadequate assistance of counsel); see also Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999)

("failing to pursue a futile tactic does not amount to constitutional ineffectiveness"). Finally,

even if the SJC was incorrect in concluding that the statements would not have been admissible

under Second Circuit case law, the decisions of the Second Circuit are not "clearly established

Federal law" under § 2254(d)(1). See Joyner v. Barnes, 135 S. Ct. 2643, 2646 (2015). Thus, Keo

has not established that the SJC unreasonably applied federal law in deciding that Keo did not

suffer prejudice as a result of any identified failure of counsel. Accordingly, the SJC's

determination that Keo's trial counsel was not ineffective was not an unreasonable application of

the Strickland standard.

    In his memorandum of law, Keo requests an evidentiary hearing to determine whether

there was an innocent explanation for the prosecutor's differing theories of guilt at Sok's and

Keo's trials. Keo is not entitled to such an evidentiary hearing because "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). The SJC adjudicated this claim on

the merits. Although the First Circuit has indicated that Pinholster "does not prohibit an

evidentiary hearing once a petitioner has successfully shown the state court unreasonably applied federal law," Sanchez v. Roden, 753 F.3d 279, 307 (1st Cir. 2014), Keo has failed to make such a showing here.

### IV.  CONCLUSION

For the reasons discussed above, Keo's petition for a writ of habeas corpus is hereby DENIED. Notwithstanding this Court's dismissal of his petition, the Court finds that Keo is entitled to a certificate of appealability. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254 Cases, R. 11(c). With respect to his third ground for relief, Keo "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). "[A] claim can be debatable even though every jurist of reason might agree . . . that petitioner will not prevail." Miller-El, 537 U.S. at 338. Keo has made the requisite substantial showing with respect to the third ground for relief—that Keo's trial counsel was ineffective for failing to offer into evidence the prosecutor's statements from Sok's trial, which undermined the prosecutor's principal theory of guilty at the defendant's trial. Accordingly, the Court hereby issues a certificate of appealability as to Ground Three of Keo's habeas petition.

**So Ordered.**

March 15, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE